**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 14, 2025

Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 North Market Street
Wilmington, Delaware 19801

Kurt M. Heyman, Esquire
Jamie L. Brown, Esquire
Elizabeth A. DeFelice, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue
Wilmington, Delaware 19801

> RE:  *Gener8, LLC et al. v. Scott Castanon*,
>      C.A. No. 2022-0426-LWW

Dear Counsel:

This letter opinion addresses the plaintiffs' application for attorneys' fees and expenses. The application is granted, with certain reductions.

## I.     BACKGROUND

In February 2020, Scott Castanon sold Symbient Product Development, LLC to Gener8, LLC for $14.4 million. In the Equity Purchase Agreement (the "EPA") governing the sale, Castanon agreed to restrictive covenants including a non-compete provision and provisions barring him from soliciting Symbient employees or customers.

After trial, I found that Castanon had breached these restrictive covenants and harmed plaintiffs Gener8 and Symbient.[1] My September 29, 2023 post-trial opinion (the "Opinion") awarded the plaintiffs damages of $104,356 plus interest for these breaches of contract.[2] I also awarded injunctive relief specifically enforcing the EPA.[3] But I found that the plaintiffs had failed to prove their claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and for intentional interference with contractual relations and with prospective economic advantage.[4]

I further held that the plaintiffs were entitled to "reasonable attorneys' fees" under a prevailing party provision in the EPA.[5] Specifically, I observed that "Section 10.14 of the EPA entitles the 'prevailing party' to recover 'its actual out-of-pocket costs and expenses, including without limitation reasonable attorneys' fees incurred in connection with' 'an action to enforce [that party's] rights under [the EPA].'"[6] The Opinion explained that the plaintiffs prevailed on "[t]he predominant

---

[1] *Gener8, LLC v. Castanon*, 2023 WL 6381635 (Del. Ch. Sept. 29, 2023) ("Mem. Op.").

[2] *Id.* at *34.

[3] *Id.* at *35.

[4] *Id.* at *27-30.

[5] *Id.* at *35.

[6] *Id.* (quoting EPA § 10.14).

issue in this case," which "was whether Castanon breached non–compete and non–solicit covenants in the EPA."[7] "[T]he other claims stemmed from the same factual predicate and involved issues overlapping with Castanon's contractual breaches."[8] I requested further submissions on the reasonableness of the plaintiffs' requested fees and expenses.[9]

I also found that Castanon had committed contempt and spoliation.[10] As a remedy, I drew adverse inferences in the plaintiffs' favor and awarded the plaintiffs their reasonable attorneys' fees and expenses in bringing a motion for sanctions.[11]

The plaintiffs subsequently filed bills of costs and Rule 88 affidavits in support of their application for attorneys' fees and expenses.[12] The fees and expenses sought total $3,011,507.89.[13]

---

[7] *Id.*

[8] *Id.*

[9] *Id.* at *36.

[10] *Id.* at *13-16.

[11] *Id.* at *16-17.

[12] *See* Dkts. 170-72.

[13] *Id.*

The breakdown is as follows:

| Law Firm | Fees re: Enforcing EPA | Costs re: Enforcing EPA | Fees and Costs re: Sanctions | TOTAL |
|---|---|---|---|---|
| Armstrong Teasdale LLP | $316,287.50[14] | $45,504.16[15] | $1,175.00[16] | **$362,966.66[17]** |
| Foley & Lardner LLP | $2,323,251.00[18] | $167,064.73[19] | $158,225.50[20] | **$2,648,541.23** |
| **TOTAL** | **$2,639,538.50** | **$212,568.89** | **$159,400.50** | **$3,011,507.89** |

---

[14] Rule 88 Aff. of Jonathan M. Stemerman, Esq. in Supp. of Attys.' Fees and Costs (Dkt. 171) ("Stemerman Aff.") ¶¶ 28-29. This total includes $313,442.50 invoiced through November 2023 and $2,845 in fees incurred in December 2023, which had not yet been billed or invoiced at the time the affidavit was submitted.

[15] *Id.* ¶¶ 29-30. This total includes $45,456.20 invoiced through November 2023 and $47.96 in costs incurred in December 2023, which had not yet been invoiced at the time the affidavit was submitted.

[16] *Id.* ¶ 38. In critiquing certain of these fees as unreasonable and unsubstantiated (*see supra* Section II.B.5), Castanon asserted that charging $160,000 for a 4,000-word motion for sanctions was "excessive, unreasonable and should be right-sized." Def. Scott Castanon's Objections to Pl.'s Fees (Dkt. 173) ("Def.'s Opp'n") 14. Other than this lone accusation, which was excluded from Castanon's itemized list of purportedly unreasonable entries, Castanon did not object to any specific fees and expenses pertaining to the contempt and spoliation sanctions. The billed amounts appear reasonable.

[17] This total diverges slightly from that included in Armstrong Teasdale's affidavit. *See* Stemerman Aff. ¶ 31. But the component parts and the overall total align with the plaintiffs' submissions. *See* Def.'s Opp'n 4 (summarizing plaintiffs' affidavits).

[18] Rule 88 Aff. of Donald W. Schroeder, Esq. in Supp. of Attys.' Fees and Costs (Dkt. 172) ("Schroeder Aff.") ¶ 28.

[19] *Id.* ¶ 29.

[20] *Id.* ¶ 36.

Castanon objected to the plaintiffs' application and asserted that any fee and expense award should not exceed $1,500,000.[21]

Proceedings were delayed when a suggestion of death of Castanon was filed by defense counsel.[22] I granted defense counsel's motion to substitute the executor of Castanon's estate for Castanon in this action.[23] But defense counsel subsequently notified the court that the executor had not been formally appointed the personal representative of Castanon's estate by a California court.[24] The plaintiffs thus objected to the suggestion of death.[25] Eventually, the executor's appointment was finalized and an amended motion for substitution was filed, which I granted.[26] In doing so, Castanon's objection to the plaintiffs' fee application was deemed ratified by the executor.[27]

---

[21] Def.'s Opp'n 6.

[22] Dkt. 176.

[23] Dkt. 181.

[24] Dkt. 182.

[25] Dkt. 184; *see* Ch. Ct. R. 25(a)(3) ("Any statement noting death should identify the decedent's successor or representative, and that person's attorney, if any.").

[26] Dkt. 186 at 1.

[27] *Id.* at 2 ("Defendant Scott Castanon's Objections to Plaintiffs' Fees, filed on February 1, 2024, is hereby deemed ratified by the Executor, as requested by the Executor's Amended Motion for Substitution.").

## II.    ANALYSIS

"Delaware law dictates that, in fee shifting cases, a judge determines whether the fees requested are reasonable."[28]  This court "has broad discretion in determining the amount of fees and expenses to award."[29]  In assessing the reasonableness of a fee application, the court is guided by the factors set out in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[30]  Rule 1.5(a) directs the court to consider:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.[31]

---

[28] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[29] *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE) (citation omitted).

[30] *Mahani*, 935 A.2d at 245-46; *see also Greenstar IH Rep., LLC v. TutorPerini Corp.*, 2019 WL 6884752, at *2 (Del. Ch. Dec. 4, 2019).

[31] Del. Laws.' R. Pro. Conduct 1.5(a); *see also Aveta v. Bengoa*, 2010 WL 3221823, at *4 (Del. Ch. Aug. 13, 2010).

"Determining reasonableness does not require [the] Court [to] examine individually each time entry and disbursement" or "assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."[32] Instead, the court may find "[a] party's expenses are reasonable if they were actually paid or incurred, were thought prudent and appropriate in the good faith professional judgment of competent counsel, and were charged at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances."[33]

## A.    The Overall Fee Request

Castanon asserted that the fee request is excessive because the plaintiffs only prevailed on one of five claims and were awarded a small portion of the damages sought.[34] He claimed that the litigation was "economically irrational" because the plaintiffs' fees are "nearly 30 times [their] compensatory damages."[35] Even so,

---

[32] *Aveta*, 2010 WL 3221823, at *6; *see also Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018).

[33] *Weil*, 2018 WL 834428, at *12 (cleaned up).

[34] Def.'s Opp'n 1.

[35] *Id.* at 2 (emphasis omitted).

Castanon's arguments are not grounds to limit the plaintiffs' recovery of reasonable fees and expenses.

In the Opinion, I found that Castanon provided "extensive assistance" in setting up a competitor in violation of his non-compete.[36] He persuaded key Symbient employees to join the new competitor and solicited former, current, and future potential Symbient customers.[37] The plaintiffs therefore prevailed in demonstrating that Castanon breached the EPA.

The EPA contemplates fee shifting where, as here, a party prevails in enforcing their contractual rights.[38] It does not require that fees be awarded in proportion to the party's success. "A private party possessed of contractual rights may pursue those rights vigorously even if, as here, they are ultimately only partially successful. If the contract includes reimbursement of expenses necessary to enforce those rights, then such expenses may be awarded."[39]

---

[36] Mem. Op. *24.

[37] *Id.* at *24-26.

[38] *See supra* note 6 and accompanying text (quoting EPA § 10.14).

[39] *EDIX Media Grp., Inc. v. Mahani*, 2007 WL 417208, at *1 (Del. Ch. Jan. 25, 2007), *aff'd*, 935 A.2d 242.

Bringing Castanon's actions to light required extensive litigation efforts by the plaintiffs' counsel, including broad discovery and a three-day trial. Discovery included the plaintiffs' production of 135,000 documents and a collective 19 depositions.[40] Trial involved the submission of 743 joint exhibits, live testimony from 6 fact witnesses and 3 expert witnesses, and deposition testimony from 16 fact witnesses.[41] Hundreds of professional hours were devoted to trial preparation and trial alone.[42]

Although the legal issues presented were straightforward, Castanon's actions exponentially complicated the case and enlarged the time required to try it. He hid and spoliated evidence, including his own text messages.[43] He provided false testimony on the stand and seemingly led others to obfuscate.[44] He raised a series

---

[40] *See* Schroeder Aff. ¶¶ 11-12; Stemerman Aff. ¶¶ 11-12.

[41] *See* Schroeder Aff. ¶ 15; Stemerman Aff. ¶ 15.

[42] *See* Schroeder Aff. Ex. A. This "time and labor" supports the reasonableness of the plaintiffs' application. *See* Del. Laws.' R. Pro. Conduct 1.5(a)(1); *see also supra* note 31 and accompanying text (enumerating the Rule 1.5(a) factors). Counsel's hourly rate is also comparable to those deemed appropriate by this court. *See* Del. Laws.' R. Pro. Conduct 1.5(a)(3); *see, e.g.*, *Roma Landmark Theaters, LLC v. Cohen Exhibition Co.*, 2021 WL 5174088, at *5-6 (Del. Ch. Nov. 8, 2021) (concluding that an hourly rate of $1,645 was reasonable). And counsel is skilled, experienced, and reputable. *See* Del. Laws.' R. Pro. Conduct 1.5(a)(7).

[43] Mem. Op. *14-16.

[44] *Id.* at *16-17 ("Castanon recklessly destroyed evidence. He then sought to capitalize on his misconduct by providing false testimony at trial."); *see also id.* at *9 (discussing that

of "hyper-technical arguments" that were "belied by both the text of the contract and common sense."[45] Castanon—to use the words of Chancellor Chandler—seems to have felt that trial was a "gamble" where he "balanced the possibility of reducing (or even avoiding) an eventual judgment on the merits with the chance he would have to pay for a more expensive trial." [46] "If the final damages seem disproportionately small in comparison to attorneys' fees and costs, it is only because [Castanon] doubled-down on that bet too many times."[47]

## B. Specific Objections

Castanon also made seven specific objections to plaintiffs' application. These objections include purported duplicative billing, work for a non-party entity, comingled time spent for a separate lawsuit, and strategic decisions. Although most are meritless, some objections support a reduction to the award. The reductions I approve total $100,375.48.

---

Castanon's son testified that a "rich uncle" was funding the new competitor, but the supposed "rich uncle" was Castanon).

[45] *Id.* at *24.

[46] *Mahani*, 2007 WL 417208, at *2.

[47] *Id.*

1. Staffing Issues

Castanon first asserted that plaintiffs' counsel "billed for redundant and duplicative work arising from frequently counsel changes and overstaffing."[48] The plaintiffs' fee application lists "10 partners, 13 associates, 1 senior counsel, 12 paralegals and 2 other professionals, who were rotated in-and-out of the case."[49] Castanon critiqued this staffing approach relative to his own leaner one, and also asked that time to bring new plaintiffs' counsel up to speed be excluded from the award.[50]

Castanon's broader challenge is unwarranted. The fact that the plaintiffs' litigation team was larger and billed more time than Castanon's counsel does not necessarily mean that the plaintiffs' approach was unreasonable. This expedited case was litigated over a year and culminated in a multi-day trial and sanctions hearing. Given this duration, the number of professionals working on the case "appears appropriate" and "need not be second guessed."[51]

---

[48] Def.'s Opp'n 8.

[49] *Id.* at 7.

[50] *Id.* at 8-9.

[51] *Aveta*, 2010 WL 3221823, at *3.

Castanon's more specific argument challenging fees incurred due to staffing changes likewise fails. It is hardly unreasonable or inappropriate for litigation teams to evolve over the course of a year. Castanon identified time entries that he believed are attributable to new team members being brought up to speed.[52] But I have no reason to conclude that these staffing decisions were unreasonable or that the amounts billed were excessive. In fact, many of the entries reveal that substantive case-related work was being done.[53]

Moreover, the cases Castanon relied on to exclude these entries concern changing law firms mid-case rather than intra-firm staffing changes. In *Aveta Inc. v. Bengoa*, the court declined to order a defendant to pay fees caused by the plaintiff's transition to new counsel. It explained that "[t]he decision to hire new counsel was [the plaintiff's] choice to make" and the "transition expenses were [not] 'incurred because of [the defendant's] contempt,'" which was the basis for fee shifting.[54] Similarly, in *Judge v. City of Rehoboth Beach*, the court declined to shift

---

[52] Def.'s Opp'n Ex. 1.

[53] *E.g.*, *id.* at 1 (listing time entries including "draft Castanon Deposition Notice . . . start list of issues regarding trial preparation . . . preparation of correspondence to potential damages experts").

[54] 2010 WL 3221823, at *7 (Del. Ch. 2010) (explaining that the court was not opining on reasonableness, since there was "no cause to believe that [the plaintiff] acted unreasonably in changing counsel or that the transition costs were excessive").

fees for "double charges" where one firm representing the plaintiffs billed for the same work as another firm representing them.[55]  Here, the charges involve Foley & Lardner LLP's staffing of professionals on this matter—a professional judgment I decline to question.[56]

### 2. Representation of Plaintiffs' Parent

Castanon next challenged the inclusion of fees incurred for non-party Sverica Capital Management LP, which is the plaintiffs' ultimate parent.[57]  During the discovery process, Castanon was required to treat Sverica as distinct from the plaintiffs.[58]  For example, he served a third-party subpoena on Sverica because the plaintiffs refused to produce documents from it otherwise.[59]

---

[55] 1994 WL 198700, at *7 (Del. Ch. Apr. 29, 1994).

[56] *See Aveta*, 2010 WL 3221823, at *3; *Sparton Corp. v. O'Neil*, 2018 WL 3025470, at *6 (Del. Ch. June 18, 2018) (stating where "the hourly rates charged by Defendants' counsel are not excessive, and the staffing of attorneys appears appropriate," they should not be second-guessed).

[57] Sverica Capital Management LP is "the manager of Sverica Capital Management Partners IV, which is the ultimate majority shareholder of G8 Holdings, LLC."  Joint Pre-trial Stipulation and Order (Dkt. 119) ¶ II.A.2.  G8 Holdings, LLC is "the sole member of Gener8, LLC."  *Id.* ¶ II.A.1.  Symbient was sold to Gener8 in February 2020. *Id.* ¶ II.A.3.

[58] *Nieves v. Insight Bldg. Co.*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) ("Delaware law presumes respect for the corporate form: 'A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.'" (citing *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 n.44 (Del. Ch. Nov. 13, 2018))).

[59] Dkt. 22.

Yet, the plaintiffs' fee application includes work performed at the direction of Sverica, its officers, or its counsel. For example, the plaintiffs seek fees for correspondence related to the "Sverica subpoena" and a related "motion for [a] protective order."[60] The plaintiffs cannot blur corporate separateness in their fee request after insisting on it during discovery. The associated time, which corresponds to $12,120 in fees, will be deducted from the award.

Castanon further pointed to a series of time entries where work for the plaintiffs and Sverica was comingled in block billing.[61] The flagged entries correspond to $109,682.50 in fees.[62] These entries seem to mostly concern work for the plaintiffs, mixed with work regarding the Sverica subpoena. To address the comingling, I will subtract 25% of the fees ($27,420.63) from the total to be paid by Castanon's estate.[63]

---

[60] Def.'s Opp'n Ex. 2 at 1. The plaintiffs do not rebut this contention. *See* Reply in Supp. of Pls.' Rule 88 Aff. for Attys.' Fees and Costs (Dkt. 177) 5-6 (discussing work for a Sverica officer, who was a trial witness).

[61] Def.'s Opp'n Ex. 3.

[62] *Id.*

[63] Castanon requested a 50% reduction. Def.'s Opp'n 10. After reviewing the time entries, I conclude that this discount is too great.

### 3. Fees Related to Parallel California Litigation

Castanon's next objection relates to fees incurred in furtherance of the plaintiffs' related lawsuit in California, which was filed after the Delaware action.[64] This litigation was led by two Foley attorneys.[65] Castanon identified $17,965 in fees seemingly attributable only to the California litigation.[66] He also pointed to another $130,600.50 of fees based on comingled block-billed entries that are partly attributable to the California case.[67]

There are economies of scale in representing the same clients in parallel litigation. It would be unrealistic and inefficient to expect that counsel separately build a knowledge base and expertise where suits overlap. Many of the challenged time entries reflect such efficiencies.[68] Others concern work by the California members of Foley's team in connection with third-party discovery for the first-filed Delaware action.[69]

---

[64] *Gener8, LLC v. Protoshop Inc.*, Case No. 37-2022-00039503-CU-PT-CTL (Cal. Super.).

[65] Def.'s Opp'n 10.

[66] Def.'s Opp'n Ex. 4.

[67] Def.'s Opp'n Ex. 5.

[68] For example, one of the selected entries concerns communications with a "potential damages expert" and conferences "regarding California and Delaware cases and damages claims." *Id.* at 1.

[69] *See* Def.'s Opp'n Exs. 4-5.

This situation is different from that in *Richmont Capital Partners I, L.P. v. J.R. Investments Corp.*, which Castanon cited in support of subtracting the California-related fees entirely.[70] There, the court excluded from a fee award the time and expenses related to issues that were handled by a Texas court before the plaintiffs injected them into a second-filed Delaware action.[71] Here, by contrast, the fees and expenses relate to issues that were tried in Delaware.

Since most of the entries submitted in this category are fairly attributable to the construction of a general knowledge base, I discount the identified entries by 25% rather than deducting them entirely.[72] The total to be subtracted from the fee award on this basis is $37,141.38.[73]

### 4. Strategic Decisions

Castanon next asked that fees incurred for the plaintiffs' "imprudent litigation strategies" be excluded.[74] In particular, he questioned the plaintiffs' decision to

---

[70] 2004 WL 1152295, at *3 (Del. Ch. May 20, 2004); *see also* Def.'s Opp'n 11.

[71] *Id.* (considering whether fees were "reasonably and necessarily incurred").

[72] This is less than the 50% reduction Castanon requests, which is excessive. *See* Def.'s Opp'n 11.

[73] ($130,600.50 + $17,965) x 25% = $37,141,38.

[74] Def.'s Opp'n 12; *see also* Def.'s Opp'n Ex. 7 (listing entries in this category totaling $91,283.00).

move for a modification to the scheduling order, to assert new arguments "on the eve of trial," and to put forward a rebuttal expert that never appeared at trial.[75] I decline to reduce the fee award on these grounds. "Second-guessing an attorney's judgment as to whether work was necessary or appropriate 'is hazardous and should whenever possible be avoided.'"[76] Contrary to in the cases on which Castanon relies,[77] the tactical decisions here appear to have been made in good faith.

### 5. Unsubstantiated Entries

Castanon next identified time entries and expenses as "wholly unsubstantiated, unreasonable, or irrelevant."[78]

---

[75] Def.'s Opp'n 11-13.

[76] *Seiff v. Tokenize Inc.*, 2020 WL 6791233, at *4 (Del. Ch. Nov. 19, 2020) (quoting *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998), *aff'd*, 720 A.2d 542 (Del. 1998)).

[77] Def.'s Opp'n 11-12 (citing cases); *see Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *8 n.95 (Del. Ch. July 7, 2023) (discussing fee shifting as a sanction for bad faith litigation tactics and observing that, in such circumstances, the court "may decrease an award where the applicant's 'own litigation efforts have in some ways been less than ideal in terms of . . . prudent focus'" (quoting *Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 882 (Del. Ch. 2012))); *Richmont*, 2004 WL 1152295, *3 (considering whether fees were consistent with the court's condition that litigation in Delaware be dismissed and refiled so long as fees "reasonably and necessarily incurred" be reimbursed).

[78] Def.'s Opp'n 13-14; Def.'s Opp'n Ex. 8 (listing entries in this category totaling $30,597.73).

Castanon fairly points out that the plaintiffs seek reimbursement for unspecified "expert fees" and "service fees" totaling $18,039.23.[79] These entries do not name the expert(s) or detail the service(s) provided. This sparse information leaves me unable to conclude that the expenses are reasonable. I exclude them on that basis.[80]

Other entries identified by Castanon also seem facially unreasonable. For example, inordinate amounts of paralegal time were billed to organizing case files and requesting deposition transcripts.[81] The fees billed for these tasks total $11,308.50. I will reduce this total by half ($5,654.25).

---

[79] Def.'s Opp'n Ex. 8 at 1.

[80] *See Lynch v. Gonzalez*, 2020 WL 5587716, at *9 (Del. Ch. Sept. 18, 2020) (reducing a fee award where the court could not conclude that "expenses [we]re reasonable on their face" since the defendants "who [bore] the burden of justifying the[] expense[s]" failed to substantiate them).

[81] *E.g.*, Def.'s Opp'n Ex. 8 at 1 (listing 7.5 hours for organizing and shipping case files and 6.4 hours for "reaching out to court reporters").

The remainder of Castanon's objections in this category are to entries with typos,[82] or to—again—critique a reasonable amount of time spent on meritorious tasks.[83] These objections are overruled.

### 6. Purportedly Improper Claims

Castanon maintained that any fees award should be discounted to account for claims that the plaintiffs "should have . . . abandoned."[84] But no claims were abandoned here, unlike in the case law Castanon cited.[85] Certain claims were simply unproven by the plaintiffs at trial. "Absent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[86]

---

[82] *Id.* ("Review relatively documents for.").

[83] *Id.* (0.60 hours spent on "[a]ttention to correspondence from [individuals]; coordinate entity operation"); *id.* at 2 (0.10 hours spent on "[c]ommunications with [individual regarding] deposition"). Neither entry is unreasonable or excessive.

[84] Def.'s Opp'n 15 (emphasis removed).

[85] *Id.* (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *6 (Del. Ch. Dec. 20, 2004) (reducing a fee award to account for abandoned claims)).

[86] *West Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).

Further, there is nothing in the record suggesting that the plaintiffs advanced their claims unreasonably or in bad faith, as Castanon suggested. His objection on this basis fails for the same reasons that his general objection to the fee award was overruled above.[87]

### 7.  Expert Set-Off

Finally, Castanon asked that the plaintiffs' fee award be "set off" by the roughly $64,000 he spent on his expert, since the Opinion adopted Castanon's expert's methodology.[88]  Castanon cites to no provision of the EPA supporting this request.  Section 10.14 of the EPA only permits a "prevailing party" to recover its fees.[89]  It does not contemplate any form of set-off.  None is adopted here.

---

[87] *See supra* Section II.A.

[88] Def.'s Opp'n 16-17.

[89] Mem. Op. *35 (quoting EPA § 10.14); *see also supra* note 6 and accompanying text.

## III.     CONCLUSION

Accounting for the deductions detailed above, the plaintiffs' fee and expense award is calculated as follows:

| | |
|---|---:|
| Total Requested | $3,011,507.89 |
| *Sverica-Related Fees* | ($39,540.63) |
| *California Litigation Fees* | ($37,141.38) |
| *Unsubstantiated Entries* | ($23,693.48) |
| **Total Awarded** | **$2,911,132.41** |

Within 60 days, Castanon's estate must reimburse $2,911,132.41 of plaintiffs' counsel's fees and expenses.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor